UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21173-CIV-O'SULLIVAN
Case No. 18-23585-CIV-O'SULLIVAN

[CONSENT]

JOSE RODRIGUEZ and
MARCEE K. RODRIGUEZ,

     Plaintiffs,

v.

GEOVERA SPECIALTY
INSURANCE COMPANY,

     Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Verified Motion to Determine Amount of Attorneys' Fees and Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest (DE# 161 in Case No. 18-cv-23585-JJO; DE# 138 in Case No. 19-cv-21173-JJO, 5/13/20).

## BACKGROUND

This matter stems from two breach of contract actions brought by Jose Rodriguez and Marcee K. Rodriguez (collectively, "plaintiffs") against their homeowner's insurance carrier, GeoVera Specialty Insurance Company (hereinafter "defendant"). The cases were consolidated and on February 26, 2020, the jury returned a verdict in favor of the plaintiffs in both cases in the total amount of $111,087.63. See Verdict Form (DE# 119 in Case No. 19-cv-21173-JJO; DE# 142 in Case No. 18-cv-23585-JJO, 2/27/20). Consistent with the jury's verdict, the Court entered a final judgment in favor of the

plaintiffs and against the defendant on the same day. See Final Judgment (DE# 113 in Case No. 19-cv-21173-JJO; DE# 136 in Case No. 18-cv-23585-JJO, 2/26/20).

On March 24, 2020, the plaintiffs filed a motion to tax costs in the amount of $59,788.87. See Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Motion to Tax Costs and Supporting Memorandum of Law, Sworn Bill of Costs and Supporting Documentation (DE# 129 in Case No. 19-cv-21173-JJO; DE# 152 in Case No. 18-cv-23585-JJO, 3/24/20). "In the reply, the plaintiff[s] agreed to reduce the amounts requested for mediation, travel, research, courier/shipping charges, and parking" by $6,739.56, thereby reducing their costs to $53,049.31. See Order (DE# 145 in Case No. 19-cv-21173-JJO; DE# 168 in Case No. 18-cv-23585-JJO at 2 n. 1, 5/26/20). Of this amount, the Court awarded the plaintiffs $9,175.97 in taxable costs pursuant to 28 U.S.C. § 1920. Id. at 23.

On May 13, 2020, the plaintiffs filed the instant motion for attorney's fees and costs. See Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Verified Motion to Determine Amount of Attorneys' Fees and Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest (DE# 138 in Case No. 19-cv-21173-JJO; DE# 161 in Case No. 18-cv-23585-JJO, 5/21/20) (hereinafter "Motion"). The defendant filed its response in opposition on June 8, 2020. See Response in Opposition to Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Verified Motion to Determine Amount of Attorneys' Fees And Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest (DE# 148 in Case No. 19-cv-21173-JJO; DE# 171 in Case No. 18-cv-23585-JJO, 5/21/20) (hereinafter "Response"). The plaintiffs filed their reply on June 18, 2020. See Plaintiffs Jose Rodriguez and Marcee K. Rodriguez's Reply to Defendant's

Response in Opposition to Plaintiffs['] Verified Motion to Determine Amount of Attorneys' Fees and Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest and Objection to Defendant's Request for Hearing (DE# 155 in Case No. 19-cv-21173-JJO; DE# 176 in Case No. 18-cv-23585-JJO, 6/18/20) (hereinafter "Reply").

This matter is ripe for adjudication.

## REQUEST FOR HEARING

The defendant requests a hearing on the instant Motion. Response at 1-2. The plaintiffs object to the defendant's request for a hearing stating that "it is not necessary and would not serve any constructive purpose in light of the extensive expert reports on both sides including sworn testimony by counsel and their experts and detailed costs documentation." Reply at 2.

The Court has carefully reviewed the parties' filings, including their supporting documents, and finds that a hearing on the instant motion is not necessary. "A hearing on [a] fee issue is required 'where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact . . . . An evidentiary hearing is unnecessary for issues about which the district court possesses sufficient expertise: 'Such matters might include the reasonableness of the fee, the reasonableness of the hours and the significance of [the] outcome.'" Thompson v. Pharmacy Corp. of Am., 334 F.3d 1242, 1245 (11th Cir. 2003) (quoting Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303-04 (11th Cir. 1988)). Accordingly, the defendant's request for a hearing is **DENIED**.

## ANALYSIS

**A.    Attorney's Fees**

The plaintiffs seek $1,337,264.42 in attorney's fees. Motion at 1. The defendant argues that significant reductions to the amount of fees sought by the plaintiffs are warranted. See Response at 8-20.

**1.    Entitlement**

The plaintiffs obtained a judgment in their favor in the total amount of $111,087.63. See Final Judgment (DE# 113 in Case No. 19-cv-21173; DE# 136 in Case No. 18-cv-23585, 2/26/20). Accordingly, the plaintiffs are the prevailing party and are entitled to an award of reasonable attorney's fees.

**2.    Amount**

Having determined that the plaintiffs are entitled to an award of attorney's fees, the Court must next address the appropriate amount of that fee award.

In calculating a reasonable fee award, the Court must consider the number of hours reasonably expended on this litigation, together with the customary fee charged in this community for similar legal services. See Norman, 836 F.2d at 1299. These two figures are then multiplied together, resulting in a sum commonly referred to as the "lodestar." The lodestar "embodies a presumptively reasonable fee." Yellow Pages Photos, Inc. v. Ziplocal, LP, 846 F.3d 1159, 1164 (11th Cir. 2017). Nonetheless, the lodestar may be adjusted in order to reach a more appropriate fee award under certain circumstances. Blum v. Stenson, 465 U.S. 886, 888 (1984).

**a.    Hourly Rate**

The Court must first evaluate plaintiffs' fee request in terms of the appropriate

hourly rate. The Supreme Court has held that a reasonable hourly rate is to be measured by "prevailing market rates in the relevant community." Blum, 465 U.S. at 895. In determining the prevailing market rates, the Court should consider several factors including: "the attorneys' customary fee, the skill required to perform the legal services, the attorneys' experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorneys' relationship to the client, and awards in similar cases." Mallory v. Harkness, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996), aff'd, 109 F.3d 771 (11th Cir. 1997) (citing Dillard v. City of Elba, 863 F. Supp. 1550, 1552 (M.D. Ala. 1993)).

Generally, acceptable proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. Norman, 836 F.2d at 1299. Furthermore, the Court may make a fee award based on its own experience where documentation and testimony are inadequate or the fees claimed seem expanded. Id. at 1303 (citing Davis v. Bd. of Sch. Comm'rs of Mobile Cty., 526 F.2d 865, 868 (5th Cir. 1976)).

The hourly rates requested for each timekeeper are outlined in the chart towards the end of this section. See infra. The plaintiffs argue that "[t]he rates charged by the respective Plaintiffs' counsels are well within the range of hourly rates charged by attorneys of similar experience in the local market." Motion at 6-7. The plaintiffs support the requested hourly rates with the declaration of their expert, Ramon A. Abadin, and the affidavits of its attorneys, Anthony Accetta, Lazaro Vazquez and Eduardo Gomez. Reply at 2; Declaration of Reasonable Attorney's Fees in Support of Plaintiffs' Motion for

Attorneys' Fees and Costs (DE# 138-5, 5/13/20) (hereinafter "Decl. of Pls.' Expert"); Certification, Verification, and Affidavit of Lazaro Vazquez (DE# 138-1, 5/13/20) (hereinafter "Aff. of Lazaro Vazquez"); Certification, Verification, and Affidavit of Anthony Accetta, Esquire (DE# 138-2, 5/13/20) (hereinafter "Aff. of Anthony Accetta"); Certification, Verification, and Affidavit of Eduardo Gomez (DE# 138-4, 5/13/20) (hereinafter "Aff. of Eduardo Gomez"). The plaintiffs have also filed state court orders awarding fees to Mr. Accetta, Mr. Vazquez and Mr. Gomez. See State Court Fee Orders (DE# 138-1 at 31-41;138-2 at 21-55; 138-4 at 17, 5/13/20).

The defendant's expert opines that "the rates . . . claimed by Attorney Lazaro Vazquez, Attorney Anthony Accetta, and Attorney Eduardo Gomez are not in keeping with the prevailing and customary rates and hours incurred in cases of this nature in Miami-Dade County" and proposes the following hourly rate ranges as reasonable: "Anthony Accetta ($475 - $525); Lazaro Vazquez ($400 - $450); Eduardo Gomez ($400 - $450); Paralegal ($150); and Law Clerk ($75)." Response at 10; Declaration of Thomas Scott (DE# 148-1 at ¶ 11, 6/8/20) (hereinafter "Decl. of Def's Expert").[1]

The plaintiffs state that their lead counsel,[2] Anthony Accetta, "is a Board Certified

---

[1] The defendant has also filed the affidavit of their counsel, Robert C. Groelle. See Affidavit of Robert C. Groelle (DE# 148-4, 6/8/20). Mr. Groelle attests that his law firm billed at hourly rates of $165.00 for partners, $145.00 for associates and $95.00 for paralegals. Id. at ¶ 3. Mr. Groelle does not disclose the background and experiences of these timekeepers, the number of hours his firm expended or the total amount billed for this case. It is not uncommon for law firms to negotiate a lower hourly rate in exchange for a higher volume of cases from an insurance carrier. Without more information, the hourly rates charged by timekeepers at Mr. Groelle's law firm is of limited assistance to the Court.

[2] Mr. Vazquez served as lead counsel until Mr. Accetta joined the case in August 2019 and took over as lead counsel. Declaration of Lazaro Vazquez (DE# 138-1 at ¶ 27, 5/13/20).

Civil Trial Lawyer as recognized by the Florida Bar" and "has a very busy law practice . . . [that] handles mostly commercial cases that compensate him by his hourly rate and not on a contingency basis." Reply at 2-3. The plaintiffs argue that if the Court were to reduce Mr. Accetta's $650 hourly rate (and not apply the requested 2.0 multiplier), it would discourage Mr. Accetta from representing other insureds in the future. Id. at 3 (stating that "[i]f this Court were to consider the Defendant's request to reduce [Anthony Accetta's] hourly rate and deny his request for a multiplier, this would deter Mr. Accetta from ever assisting other insureds who have been wronged by insurance companies but cannot afford his representation."). At the same time, the plaintiffs maintain that "Mr. Accetta has extensive experience litigating in insurance coverage and commercial litigation matters" and, along with his co-counsel in the instant case, "are clearly known as a threat to the insurance industry." Response at 3-4.

The plaintiffs submitted eight state court fee orders in support of the hourly rates requested for Mr. Vazquez, Mr. Accetta and Mr. Gomez. The Court notes that none of these cases awarded a multiplier to these attorneys.[3] See State Court Fee Orders (DE# 138-1 at 31-41;138-2 at 21-55; DE# 138-4 at 17; 5/13/20). In fact, only one case even

---

[3] In total, the plaintiffs filed eight state court orders. However, two of those orders concerned fees for sanctions under 57.105 and for violating a procedural rule. See State Court Order (DE# 138-2 at 24-30; DE# 138-4 at 17). Thus, a multiplier would not have been at issue in those proceeding.

discussed the imposition of a multiplier and the state court judge declined to award it. Id. at 138-2 at 22.

Given that insurance coverage litigation already represents a significant part of Mr. Accetta's law practice, to the extent that he, along with his co-counsel, assert that they are considered "a threat to the insurance industry," the Court is confident that a reasonable hourly rate consistent with the prevailing market rates in this community would not deter Mr. Accetta and his co-counsel from continuing to litigate insurance coverage cases.

The plaintiffs also note that the defendant's expert advocated for an hourly rate of $625.00 for certain law partners in a different case, Graves v. Plaza Med. Centers, Corp., Case No. 10-cv-23382-FAM. See Reply at 3 (stating that "[i]t's noteworthy that [the defendant's expert] testified in Graves, that a rate of $625/hr. is reasonable for select partners in a claim brought under the Fair Claims Act, which **settled without a jury trial**.") (emphasis in original).

Graves was a qui tam civil action which included allegations of Medicare Part C fraud. Graves v. Plaza Med. Centers, Corp., No. 1:10-23382-CV, 2018 WL 3699325, at *4 (S.D. Fla. May 23, 2018), report and recommendation adopted, No. 10-23382-CIV, 2018 WL 3697475 (S.D. Fla. July 13, 2018). The plaintiffs emphasize that Graves "settled without a jury trial." Reply at 3. Although the parties in Graves did not go to trial, the case was litigated extensively. At the time of the fee award, the parties in Graves had litigated the case for approximately nine years and nine months and there were 960 docket entries.

The Court in <u>Graves</u> awarded a $625.00 hourly rate to only two attorneys.[4]  One of those attorneys was "the former Deputy Chief of the Criminal Fraud Division and head of the Health Care Fraud Unit of the United States Department of Justice [and was] widely recognized to be among the most sophisticated health care attorneys in the United States." <u>Graves</u>, 2018 WL 3697475 at *7. The other attorney had been practicing for 48 years and "ha[d] extensive experience in medical malpractice cases, including more than 200 jury trials, 100 bench trials, and 25 verdicts in excess of seven figures." <u>Id.</u> at *4. Given the impressive backgrounds and qualifications of these attorneys, it is not surprising that the defendant's expert would opine that an hourly rate of $625.00 was reasonable.

Having considered the parties' submissions, counsels' reputation and experience in the applicable legal areas and the Court's familiarity with fees in general, the Court finds that the following hourly rates are reasonable and appropriate for this case:

| Timekeeper | Position | Hourly Rate Sought[5] | Hourly Rate Awarded |
|---|---|---|---|
| Anthony Accetta | Attorney | $650.00 | $525.00 |
| Lazaro Vazquez | Attorney | $500.00 | $450.00 |
| Eduardo Gomez | Attorney | $525.00 | $450.00 |
| Charles A. Luke, Jr. | Law Clerk | $125.00; $200.00 | $125.00 |
| Leslie M. Canales | Paralegal | $150.00 | $150.00 |

---

[4] The $625.00 hourly rate awarded was a substantial reduction from the hourly rates of $1,090.00-$1,110.00 and $900.00 sought by the movant. <u>Graves</u>, 2018 WL 3699325, at *4.

[5] <u>See</u> Motion at 3; <u>id.</u> at 7 n.5.

| Yanely Rodriguez-Accetta | Paralegal | $150.00 | $150.00 |
| Brandon F. Rodriguez | Paralegal | $75.00 | $75.00 |
| Barbie Delgado | Paralegal | $95.00 | $95.00 |
| Rosa Fernandez | Paralegal | $125.00 | $125.00 |

The Court recognizes that Mr. Accetta, Mr. Vazquez and Mr. Gomez are skilled attorneys, but finds the requested hourly rates to be excessive. Based on the Court's own knowledge and expertise in the award of attorney's fees, the Court will award hourly rates of $525.00 for Mr. Accetta and $450.00 for Mr. Vazquez and Mr. Gomez. The Court finds that $150.00 is an appropriate hourly rate for paralegals in the instant case. However, where the paralegal billed at a lower hourly rate, the Court will award the rate requested. Law clerk Charles A. Luke, Jr. billed at two different rates, $125.00 and $200.00. The most likely explanation is that Mr. Luke became an attorney. However, because the plaintiffs provided no explanation for the rate change, the Court will award Mr. Luke the lower of the two hourly rates.

### b.    Hours Expended

The Court must next evaluate the plaintiffs' requested fee for reasonableness in terms of the total hours expended by the plaintiffs' counsel. The Court must exercise independent judgment when reviewing a claim for hours reasonably expended. Norman, 836 F.2d at 1301-02. Hours deemed to be "excessive, redundant, or otherwise unnecessary" should be excluded. Id. at 1301.

It is important to keep accurate and current records of work done and time spent on a case, especially when a third party — someone other than the client — may pay

the bills. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983). "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." <u>Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.</u>, 675 F.2d 1319, 1327 (D.C. Cir. 1982). It is necessary for attorneys to identify the subject matter of their time expenditures. <u>Hensley</u>, 461 U.S. at 437. If there is inadequate documentation or if the Court finds a claim for hours to be excessive or unnecessary, the Court may reduce the number of hours for which fees will be awarded. <u>See</u> <u>Loper v. New York City Police Dep't</u>, 853 F. Supp. 716, 721 (S.D.N.Y. 1994) ("where adequate contemporaneous records have not been kept, the court should not award the full amount requested").

The plaintiffs' Motion requests reimbursement for 1,711.65 hours for work performed by attorneys, paralegals and a law clerk. The plaintiffs support their fee request by submitting itemized billing records, the affidavits of attorneys Anthony Accetta, Lazaro Vazquez, Eduardo Gomez and the declaration of the plaintiffs' fee expert. The total number of hours requested for each timekeeper is outlined in the chart below.

| Timekeeper | Position | Hours Sought |
| --- | --- | --- |
| Anthony Accetta | Attorney | 374.85 |
| Lazaro Vazquez | Attorney | 606.10 |
| Eduardo Gomez | Attorney | 258.05 |
| Charles A. Luke, Jr. | Law Clerk | 12.63 |
| Yanely Rodriguez-Accetta | Paralegal | 116.35 |
| Leslie M. Canales | Paralegal | 187.07 |

| Brandon F. Rodriguez | Paralegal | 124.40 |
| Barbie Delgado | Paralegal | 16.50 |
| Rosa Fernandez | Paralegal | 15.70 |

Motion at 3; id. at 7 n.5.

The plaintiffs argue that because there was a contingency fee agreement, "counsel was motivated to be as economical and efficient with their time as possible in fully prosecuting these cases." Motion at 5. They further argue that "many of the hours expended by the [plaintiffs' counsel were] largely the product of defense counsel's aggressive defense of these cases on the basis of insurance fraud and failure to cooperate with deadlines involving preparing the pretrial stipulation, and conferring on joint jury instructions and verdict forms." Id. The plaintiffs also cite the defendant's numerous document requests. Id. (stating that "Geo[V]era chose to request a large number of documents through various document requests which the [plaintiffs' counsel] had to carefully review and analyze.") Id. Lastly, the plaintiffs cite their favorable outcome. Id. at 6 (noting that prior to the litigation, the defendant had offered the plaintiffs no money, during the litigation the defendant offered the plaintiffs $5,000.00 each per claim and at the conclusion of the litigation, the jury awarded the plaintiffs $111,087.63).

The defendant seeks to substantially reduce the amount of attorney's fees requested by the plaintiffs. The defendant notes that its expert found "several instances of duplicative work, overstaffing, internal conferences between lawyers, and other problematic billing practices." Response at 11 (internal quotation marks omitted). The defendant also challenges the plaintiffs' characterization of the defendant's litigation

strategy as an "aggressive defense." Id. at 12. The defendant notes that the plaintiffs only questioned one witness regarding the defendant's affirmative defense of fraud/misrepresentation and that only approximately five pages of the trial transcript addressed the topic. Id. The defendant also notes that its counsel "routinely prepared the first drafts of the Joint Stipulations, Jury Instructions, Witness Lists, Exhibits Lists, and other similar joint submissions." Id. Lastly, with respect to the plaintiffs' complaints about voluminous document production, the defendant asserts that in both cases, the plaintiffs produced approximately 385 pages of documents. Id.

### i.    Plaintiffs' Attempt to Cure Block Billing Entries

The defendant argues that "numerous billing entries could not be properly evaluated because they were either vague or 'block billing.'" Response at 14. "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 F. App'x 198, 203 (11th Cir. 2012).

The plaintiffs attempt to cure their attorneys' use of block billing by submitting amended time entries with their Reply. See Response to Defense Expert's [Lazaro Vazquez] Affidavit Time Analysis re. Block Billing Objections (DE# 155-2 at 1-8; 6/18/20); Response to Defense Expert's [Anthony Accetta] Affidavit Time Analysis re. Block Billing Objections DE# 155-2 at 9-16; 6/18/20); Response to Defense Expert's [Eduardo Gomez] Affidavit Time Analysis re. Block Billing Objections (DE# 155-2 at 17-20; 6/18/20).

The Court will not accept the plaintiffs' belated attempts at curing their block billing entries. "Attorneys who anticipate making a fee application must maintain

**contemporaneous** . . .   time records which accurately reflect the work done by each

attorney." <u>Nat'l Ass'n. of Concerned Veterans</u>, 675 F.2d at 1327 (emphasis added).

Here, the plaintiffs' attorneys' belated revisions, some which date back to 2017, 2018

and 2019, represent mere guesswork by counsel as to the amount of time actually

spent on each task. Block billing "mak[es] it difficult to ascertain how much time was

spent on each task." Office of the Attorney Gen. v. Moving & Storage Accounting Inc.,

No. 18-CV-63144, 2020 WL 5217183, at *4 (S.D. Fla. Aug. 14, 2020), report and

recommendation adopted, No. 18-CIV-63144-RAR, 2020 WL 5215151 (S.D. Fla. Aug.

31, 2020). Block billing also "results in imprecision in an attorney's records." <u>Prince v.</u>

<u>Marson</u>, No. 8:19-CV-549-T-35AAS, 2020 WL 1891191, at *2 (M.D. Fla. Apr. 16, 2020)

(citation and internal quotation marks omitted). Counsels' belated guestimates do not

render the plaintiffs' billing records any more precise. Therefore, the Court will not

accept these revised time entries. An across-the-board reduction to account for

impermissible block billing is warranted and will be applied below. <u>See</u> <u>Ceres Envtl.</u>

<u>Servs., Inc.</u>, 476 F. App'x at 203 (noting that "Courts have . . . approved across-the-

board reductions in block-billed hours to offset the effects of block billing.").

### ii.   Expert Declarations

The parties' experts disagree on the complexity of the instant case. The plaintiff's

expert describes the instant case as one that was vigorously and aggressively defended

by the defendant. Decl. of Pls.' Expert at ¶ 12. He notes that this matter involved two

separate claims which "were litigated over the course of [two] years and ultimately

consolidated for trial." Id. at ¶ 17. The plaintiffs' expert notes that there were 79 motions[6] filed, including cross-motions for summary judgment and ten motions in limine, nine depositions taken and that the jury trial lasted three days. Id.

By contrast, the defendants' expert characterizes the case as "a simple breach of contract claim by an insured against its homeowner['s insurance] carrier for water damage arising from two incidents in December of 2015 and as a result of Hurricane Irma on September 10, 2017." Decl. of Def's Expert at ¶ 12. The defendant's expert notes that the total amount recovered for both claims was $111,087.61. Id. The defendant's expert further notes that the trial only lasted three days, that seven witnesses were called and that there were approximately 30 trial exhibits introduced by each party. Id. The defendant's expert further states that while cross-motions for summary judgment were filed, they were "largely denied" and that the motions in limine were "[n]oncomplex." Id.

Although the parties' experts disagree on the complexity of the case and the manner in which it was litigated, both experts propose reductions to the plaintiffs' billing records. The plaintiffs' expert proposes an across-the-board ten percent reduction to the billing records of Mr. Accetta, Mr. Vazquez and Mr. Gomez to account for "[t]he reality [that] . . . multiple lawyers working on the same case necessarily results in duplication of

---

[6] It is unclear how the plaintiffs' expert arrives at 79 motions. According to CM/ECF, to date, 31 motions (12 motions by the plaintiffs and 19 motions by the defendant) have been filed in Case No. 18-cv-23585-JJO and 40 motions (12 motions by the plaintiffs and 28 motions by the defendant) have been filed in Case No. 19-cv-21173-JJO, for a total of 71 motions. The Court notes that many of the same motions were filed in both cases and were nearly identical. See, e.g., Motions in Limine. Thus, the total number of unique motions between the two cases is less than the 79 motions suggested by the plaintiffs' expert.

work among the law firms involved." Decl. of Pls.' Expert at ¶ 18.

The defendant's expert proposes "a thirty five percent reduction for A. Accetta . . ., [a] twenty five percent reduction for L. Vazquez and [a] twenty five percent [reduction] for E. Gomez." Decl. of Def's Expert at ¶ 19. The defendant's expert proposes these reductions to account for "multiple problems in the billing records" for the reasons discussed below. Id.

The defendant's expert identified in Mr. Accetta's billing records 63 entries with an even number of hours which the defendant's expert believes is one of several "red flags." Decl. of Def's Expert at 15(h).[7] The defendant's expert lists several instances where Mr. Accetta's time entries appear excessive for the work performed. According to the defendant's expert, Mr. Accetta billed a total of 123 hours for reviewing the file, 22 hours for preparing for and attending the deposition of Brad LaBonde (a deposition which lasted only 1.55 hours) and 92.5 hours for trial preparation and trial attendance (including three consecutive days where Mr. Accetta billed 20 hours each day). Id. The defendant's expert further notes that some time entries included block billing. Id.

With respect to the billing records for Mr. Vazquez' law firm, the defendant's expert notes numerous instances of excessive time entries. Decl. of Def's Expert at ¶ 15(i). According to the defendant's expert, Mr. Vazquez had 20 entries for client conferences totaling 61 hours. Id. The defendant's expert opined that 61 hours for a case involving "two claims for property damage . . . seem[ed] disproportionately high."

---

[7] The Court disagrees with the defendant's expert that having 63 time entries with an even number of hours, in and of itself, is a red flag. Nonetheless, the Court has carefully reviewed the billing records for Mr. Accetta's law firm and concludes that significant reductions to the time entries submitted are warranted as discussed in more detail below.

Id. The defendant's expert also found 41 time entries for reviewing the file for a total of 83 hours. Id.

Finally, with respect to Mr. Gomez' billing records, the defendant's expert calculates that Mr. Gomez spent 36 hours in lawyer conferences, 84 hours on legal research and used block billing on some entries. Decl. of Def's Expert at ¶ 15(j).

### iii.   Reductions to the Billing Records

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). "[T]he district court is to apply either method, not both." Id. at 1351.

"[I]n cases '[w]here fee documentation is voluminous,' it [would] not be feasible to require a court to 'engage in such a precise review.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994)). In the instant case, the billing records submitted by the plaintiffs total 1,711.65 hours. Therefore, an across-the-board cut rather than an hour-by-hour analysis is appropriate. See Villano, 254 F.3d at 1311 (finding that "569.30 hours for compensation" were "extensive enough that [the Eleventh Circuit] [did] not expect the district court or the magistrate judge to conduct an hour-by-hour analysis").

Upon careful review of the plaintiffs' billing records, the Court finds that the time entries were, for the most part, contemporaneous, complete, standardized and accurately reflect the work done by each attorney. Some time entries, however, are excessive, are duplicative, lack adequate detail, use block billing or constitute non-

compensable clerical work. Accordingly, a reduction to the hours requested by the plaintiffs' counsel is warranted.

### (a.)    Mr. Accetta's Billing Records

The Court has carefully reviewed the billing records for Mr. Accetta's law firm and concludes that significant reductions to the time entries submitted are warranted. Mr. Accetta's law firm blocked billed some time entries which make it impossible for the Court to ascertain the reasonableness of the time expended. See Response to Defense Expert's [Anthony Accetta] Affidavit Time Analysis re. Block Billing Objections DE# 155-2 at 9-16; 6/18/20) (attempting to cure 41 time entries which were block billed).

Additionally, Mr. Accetta spent an excessive amount of time on certain tasks. As noted by the defendant's expert, Mr. Accetta spent 22 hours for preparing for and attending the deposition of Brad LaBonde (a deposition which lasted only 1.55 hours) and 92.5 hours for trial preparation and trial attendance (including three consecutive days where Mr. Accetta billed 20 hours each day). Decl. of Def's Expert at 15(h).

Other time entries are non-descript and make it difficult, if not impossible, to determine if the task was necessary or duplicative of other time entries. For example, on August 15, 2019, August 16, 2019, August 21, 2019, August 28, 2019 and August 29, 2019, Mr. Accetta billed one hour each day for reviewing the file. See AA Billing Records (DE# 138-2 at 72-73). Without any additional information concerning which portions of the file Mr. Accetta reviewed and for what purpose he was reviewing the file, the Court cannot ascertain whether these time entries were reasonable or necessary.

The Court also finds that the participation of three law firms in this case, resulted in overlap between the work performed by the three firms. According to the defendant's

expert, Mr. Accetta's law firm billed 123 hours for reviewing the file and Mr. Vazquez' law firm billed 83 hours for reviewing the file. See Decl. of Def's Expert at ¶ 15(h) and (i).[8] The billing records for Mr. Gomez' law firm also include time entries for reviewing the file (see EG Billing Records # 40, 61, 96, 102 (DE# 138-4 at 35, 37, 40-41)). However, because of block billing, it is impossible to precisely ascertain how much time each attorney spent reviewing the file. In any event, the Court finds that an excessive and duplicative amount of time was spent by the plaintiff's three attorneys in reviewing the file.

The Court will also apply a reduction to the time entries submitted by Mr. Accetta's firm to account for non-compensable clerical work. For instance, on February 11, 2020, paralegal Yanely Rodriguez-Accetta billed 2.00 hours for preparing labels and folders and assembling boxes for use at trial. See AA Billing Records (DE# 138-2 at 89). Again, on February 12, 2020, paralegals Yanely Rodriguez-Accetta and Brandon F. Rodriguez billed 4.00 hours and 2.00 hours, respectively, for preparing labels and folders or assisting with preparing labels and folders. Id. On February 20, 2020, Mr. Rodriguez spent an additional hour assembling boxes. Id. at 95. The failure to remove clearly non-compensable billing entries such as time spent on assembling boxes and creating labels before submitting billing records to the Court does not demonstrate good billing judgment. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

---

[8] It appears that the defendant's expert may have calculated these totals by including some block billed entries which contained other tasks. Even accounting for this overinclusion of time, the Court still concludes that an excessive amount of time was expended by the three law firms in reviewing the file.

unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434.

Paralegal Brandon F. Rodriguez billed a total of 8 hours (2.00 hours each time) for transporting documents to and from the courthouse. See AA Billing Records (DE# 138-2 at 90, 99, 100, 101). This activity is not compensable. Other non-compensable time entries include calling the Court to inquire about the delivery of binders and discussing a retainer fee with the trial technical support personnel. See AA Billing Records (DE# 138-2 at 89-90, 99-101).

The Court also found an excessive amount of time entries for organizing or assembling binders. See AA Billing Records (DE# 138-2 at 65, 80, 85, 88-90, 92-93, 96-97, 99, 101). In total, Mr. Accetta's three paralegals spent approximately 39.80 hours (almost a full workweek) assembling binders for the three-day jury trial: 18.50 hours spent by Brandon F. Rodriguez, 12.30 hours spent by Leslie M. Canales and 9.00 hours spent by Yanelis Rodriguez-Accetta. Id. at 85, 88-90, 92-93, 96-97, 99, 101. Paralegal Leslie M. Canales spent an additional 7.20 hours assembling binders for other non-trial related purposes. Id. at 65, 80, 85. These totals do not include an additional 8.00 hours spent by paralegal Yanelis Rodriguez-Accetta organizing photocopies for trial. Id. at 88, 95. The Court finds that the amount of time expended for these activities is unreasonable.

The Court finds many examples of excess billing, duplicative billing, block billing and non-compensable clerical work which warrant a 35 percent reduction to the billing records submitted by Mr. Accetta's firm.

### (b.)    Mr. Vazquez' Billing Records

The Court has carefully reviewed the billing records for Mr. Vazquez' law firm and concludes that some reductions to the time entries submitted are warranted. As already noted by the defendant's expert, Mr. Vazquez spent an excessive amount of time (61 hours) meeting with his clients and reviewing the file (83 hours). See Decl. of Def's Expert at ¶ 15(i). Even accounting for the likelihood that the defendant's expert's calculations include some block billed entries which contain other tasks, the Court finds that there was an excessive amount of time spent by Mr. Vazquez for these tasks which require a reduction.

Further reductions are merited for block billing. Mr. Vazquez acknowledges at least 28 instances of block billed entries which he belatedly attempted to cure in an exhibit attached to the Reply. See Response to Defense Expert's [Lazaro Vazquez] Affidavit Time Analysis re. Block Billing Objections (DE# 155-2 at 1-8; 6/18/20).

The Court also found instances of unnecessary and/or duplicative work in Mr. Vazquez' billing records. The Court notes that on August 16, 2020, Mr. Vazquez billed 2.00 hours for conferencing with co-counsel regarding the deposition of defendant's expert Ryon Plancer, 3.25 hours for attending the deposition of Mr. Plancer and 1.00 hour of travel time related to the deposition of Mr. Plancer. See LV Billing Records (DE# 138-1 at 77). These time entries are duplicative of the work performed by Mr. Accetta who took the deposition of Mr. Plancer and billed 9.00 hours preparing for and attending Mr. Plancer's deposition. See AA Billing Records (DE# 138-2 at 72). This amount is in addition to the 5.00 hours billed by Mr. Accetta's paralegal, Leslie M. Canales, for accessing and reviewing the file to assist Mr. Accetta with organizing the file in

preparation for Mr. Plancer's deposition, which itself is excessive and likely non-compensable clerical work. Id.

The Eleventh Circuit recognizes that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1302 (citing Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983)). To recover time for multiple attorneys, the fee applicant bears the burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. ACLU v. Barnes, 168 F.3d 423 (11th Cir. 1999). The plaintiffs have not shown that the tasks performed by Mr. Vazquez and Mr. Accetta relating to the deposition of Mr. Plancer reflect distinctive contributions to the case. As such, a reduction is necessary to account for duplicative or unnecessary time entries.

Mr. Vazquez was the only timekeeper listed on his billing records. The Court found instances of secretarial or paralegal work which do not merit Mr. Vazquez' high hourly rate. See, e.g., LV Billing Records (DE# 138-1 at 47) (drafting summons); Id. at 67-68, 75-76) (drafting notices, re-notices and cross-notices of deposition); id. at 56, 73 (drafting notice of selection of mediator); id. at 63 (cancelling deposition of plaintiffs and confirming deposition of witness).

The Court also found instances where Mr. Vazquez' billing entries are excessive for the task described or are insufficiently detained to support the time billed. For example, on August 31, 2018, Mr. Vazquez' billed a total of 4.00 hours for legal

research concerning the procedure for removal of a case to federal court, the timeliness of the notice of removal and the waiver of removal. See LV Billing Records (DE# 138-1 at 47-48). The Court finds 4.00 hours to be excessive for the descriptions provided. On the same day, Mr. Vazquez billed 2.00 hours for "review[ing] all information exchanged before the removal re[garding] damages sought in state court action." Id. at 48. Without a more detailed description, it is impossible for the Court to evaluate the reasonableness of the time spent on this task.

The Court found many examples of excessive time entries, duplicative billing, block billing and secretarial or paralegal work performed by an attorney which warrant a 25 percent reduction to the billing records submitted by Mr. Vazquez' firm

### (c.)   Mr. Gomez' Billing Records

The Court has carefully reviewed the billing records for Mr. Gomez' law firm and concludes that some reductions to the time entries submitted for Mr. Gomez' law firm are warranted.

The Court will reduce Mr. Gomez' time entries to account for block billing. Mr. Gomez acknowledges nine instances of block billing which he attempts to cure in an exhibit attached to the Reply. See Response to Defense Expert's [Eduardo Gomez] Affidavit Time Analysis re. Block Billing Objections (DE# 155-2 at 17-20; 6/18/20).

As previously noted, the defendant's expert calculates that Mr. Gomez spent 36 hours in lawyer conferences, 84 hours on legal research and used some block billed entries. Decl. of Def's Expert at ¶ 15(j). Even accounting for an overestimation due to some block billed entries which include other tasks, the Court finds that Mr. Gomez' billing records should be reduced to account for excessive time spent on these tasks.

The Court found other instances of excessive time. For instance, Mr. Gomez billed 4.00 hours for conferring with co-counsel in preparation for a "case management conference" and 3.00 hours for "attend[ing the] case management conference with Judge O'Sullivan." See EG Billing Records (DE# 138-4 at 24). The undersigned holds status conferences in lieu of the case management conference. The docket reflects that the status conference before the undersigned lasted approximately 25 minutes. See Minute Entry (DE# 92 in Case No. Case No. 18-cv-23585-JJO, 12/13/19). Billing 7.00 hours (almost a full day) for preparing for and attending a 25-minute status conference is grossly excessive.

The Court also notes that Mr. Gomez' paralegal, Barbie Delgado, billed 0.20 hours (12 minutes) for reviewing the paperless minute entry for that status conference and updating the file. See EG Billing Records (DE# 138-4 at 24). It is unclear what update Ms. Delgado could have made to the file based on the information in the paperless minute entry or how Ms. Delgado could have spent 12 minutes reviewing a total of 40 words.

The Court also found multiple instances of duplicative and/or unnecessary work. For example, Mr. Gomez billed 2.00 hours for attending the deposition of Christopher Thompson, the plaintiff's expert. See EG Billing Records (DE# 138-4 at 19). Mr. Vazquez also billed for preparing for the deposition of Christopher Thompson (3.15 hours), travel time associated with Mr. Thompson's deposition (1.00 hour) and attendance at Mr. Thompson's deposition (2.00 hours). See LV Billing Records (DE# 138-1 at 59-60). No explanation has been provided for having two attorneys attend the deposition of this witness.

Mr. Gomez also billed for 1.30 hours for research in preparation for the deposition of Bradley LaBonde and 2.80 hours for preparing for and attending Mr. LaBonde's deposition. See EG Billing Records (DE# 138-4 at 20). Mr. Gomez' co-counsel also billed for work related to Mr. LaBonde's deposition. As noted by the defendant's expert, Mr. Accetta spent 22 hours for preparing for and attending the deposition of Mr. LaBonde, a deposition which lasted only 1.55 hours. Decl. of Def's Expert at 15(h). Mr. Vazquez billed 3.00 hours for attending the deposition of Mr. LaBonde (2.00 hours) and travel time (1.00 hour). See LV Billing Records (DE# 138-1 at 64). Aside from Mr. Accetta's excessive billing, the Court finds no explanation in the record for having three attorneys attend the deposition of this witness.

The Court finds many examples of block billing, excess time entries and duplicative billing which warrant a 25 percent reduction to the billing records submitted by Mr. Gomez' law firm.

In sum, the Court will apply a 35 percent reduction to the time entries submitted for Mr. Accetta's law firm and a 25 percent reduction to the time entries submitted by the law firms of Mr. Vazquez and Mr. Gomez to account for the billing issues identified in this Order, including block billing, excessive and duplicative time entries, non-descript time entries and non-compensable clerical work. The Court finds that the reductions listed in the chart below are reasonable and appropriate to account for the billing issues discussed in this Order.

**Mr. Accetta's Law Firm**

| Timekeeper | Position | Hours Sought | Percentage Reduction | Hours After Reduction | Hourly Rate Awarded | Lodestar |
|---|---|---|---|---|---|---|
| Anthony Accetta | Attorney | 374.85 | 35% | 243.6525 | $525.00 | $127,917.56 |
| Yanely Rodriguez-Accetta | Paralegal | 116.35 | 35% | 75.6275 | $150.00 | $11,344.13 |
| Leslie M. Canales | Paralegal | 187.07 | 35% | 121.5955 | $150.00 | $18,239.33 |
| Charles A. Luke, Jr. | Law Clerk | 12.63 | 35% | 8.2095 | $125.00 | $1,026.19 |
| Brandon F. Rodriguez | Paralegal | 124.40 | 35% | 80.86 | $75.00 | $6,064.50 |
| **Total Amount for Mr. Accetta's Law Firm:** | | | | | | **$164,591.71** |

**Mr. Vazquez' Law Firm**

| Timekeeper | Position | Hours Sought | Percentage Reduction | Hours After Reduction | Hourly Rate Awarded | Lodestar |
|---|---|---|---|---|---|---|
| Lazaro Vazquez | Attorney | 606.10 | 25% | 454.575 | $450.00 | $204,558.75 |
| **Total Amount for Mr. Vazquez' Law Firm:** | | | | | | **$204,558.75** |

**Mr. Gomez' Law Firm**

| Timekeeper | Position | Hours Sought | Percentage Reduction | Hours After Reduction | Hourly Rate Awarded | Lodestar |
|---|---|---|---|---|---|---|
| Eduardo Gomez | Attorney | 258.05 | 25% | 193.5375 | $450.00 | $87,091.88 |
| Barbie Delgado | Paralegal | 16.50 | 25% | 12.375 | $95.00 | $1,175.63 |
| Rosa Fernandez | Paralegal | 15.70 | 25% | 11.775 | $125.00 | $1,471.88 |
| **Total Amount for Mr. Gomez' Law Firm:** | | | | | | **$89,739.39** |

|  |  |
|---|---|
| **Total Amount for All Law Firms:** | **$458,889.85** |

### c.   Multiplier

"In contingency fee cases that apply Florida law, once the lodestar is established,

the [C]ourt must consider whether a multiplier is appropriate." Defronzo v. Liberty Mut.

Ins. Co., No. 6:19-CV-244-ORL-78-LRH, 2020 WL 5881702, at *13 (M.D. Fla. July 28,

2020), report and recommendation adopted, 2020 WL 5881595 (M.D. Fla. Aug. 14,

2020) (citing Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 831 (Fla. 1990);

Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1151 (Fla. 1985)). "The decision

to award a multiplier is discretionary." Crossman v. USAA Cas. Ins. Co., No. 6:18-CV-

1301-ORL-31-GJK, 2020 WL 1172048, at *4 (M.D. Fla. Feb. 7, 2020), report and

recommendation adopted, 2020 WL 1170757 (M.D. Fla. Mar. 11, 2020).

In determining whether to apply a multiplier, the Court should consider the

following factors:

> (1) whether the relevant market requires a contingency fee multiplier to
> obtain competent counsel; (2) whether the attorney was able to mitigate
> the risk of nonpayment in any way; and (3) whether any of the factors set
> forth in Rowe[9] are applicable, especially, the amount involved, the results
> obtained, and the type of fee arrangement between the attorney and his
> client.

---

9  The Rowe factors are the following:

> (1) the time and labor required, the novelty and difficulty of the question
> involved, and the skill requisite to perform the legal service properly; (2)
> the likelihood, if apparent to the client, that the acceptance of the particular
> employment will preclude other employment by the lawyer; (3) the fee
> customarily charged in the locality for similar legal services; (4) the
> amount involved and the results obtained; (5) the time limitations imposed
> by the client or by the circumstances; (6) the nature and length of the
> professional relationship with the client; (7) the experience, reputation, and
> ability of the lawyer or lawyers performing the services; and (8) whether
> the fee is fixed or contingent.

Rowe, 472 So. 2d at 1150.

Quanstrom, 555 So. 2d at 834 (footnote added).

> The plaintiffs seek the application of a risk multiplier:

> The instant matter is suitable for the imposition of a 2.0 contingency multiplier, as the clients could only hire an attorney on a contingency basis. The clients' financial situation meant they could not afford representation absent a contingency fee with the possibility of the application of a contingency fee multiplier. Additionally, the jury's verdict amount was over five (5) times the amount of Geo[V]era's proposal for settlement. And in light of [its] fraud defenses, Geo[V]era believed the Plaintiffs were not entitled to any monies whatsoever for either claim. Based on the foregoing, and the fact that success was minimal from the outset, and that the [plaintiffs' counsel] would not have taken on the representation but-for the expectation of a multiplier, the Plaintiffs[ ] request that a fee multiplier of 2.0 be applied to the lodestar.

Motion at 10.

The plaintiffs' expert notes that the case was "heavily litigated," that [v]arious dispositive motions were filed and that the defendant served offers of judgment which are "indicative of Defendant's position that it had a high likelihood of prevailing against the Plaintiffs in these cases." Decl. of Pls.' Expert at ¶ 44. The plaintiffs' expert further notes, that because of those offers of judgment, there was significant financial risk to the plaintiffs if they failed to prevail on their claims. Id. The plaintiffs' expert opines that "very few competent and qualified attorneys in South Florida would have taken these matters on a contingency basis but for the availability of a fee multiplier." Id. at ¶ 46. The plaintiffs' expert discussed the instant case with two first party insurance attorneys who stated that they would not have taken the instant case without the expectation of a multiplier, particularly in light of the fraud/misrepresentation affirmative defense. Id. at ¶ 48.

The defendant opposes the application of a multiplier. Response at 15-20. The defendant argues that the first factor in Quanstrom is not met because the "[p]laintiffs

have not provided any evidence to suggest that they had interviewed or otherwise discussed these matters with other legal counsel and were denied legal representation." Id. at 17; id. at 19 (noting that "Plaintiffs have not provided any testimony that they had difficulty in obtaining legal counsel, or that they had been rejected by any other attorneys for these matters"). The defendant further argues that the second factor is not satisfied merely because counsel represented the plaintiffs on a contingency basis and "federal courts in Florida have found that the existence of the attorney fee statute for first party cases is a sufficient mitigation of nonpayment." Id. at 17-18. Lastly, the defendant argues that the "Plaintiffs cannot meet the third factor because Plaintiffs' emphasis on the purported complexity of their case is not supported by the record before the Court" and the plaintiffs have offered no evidence to support their "claim that they could not afford representation absent a contingency fee with the possibility of the application of a contingency fee multiplier." Id. at 18.

The plaintiffs assert in their Reply that the defendant incorrectly applies a subjective standard to the first factor. Reply at 8 (stating that "the enhancement/multiplier issue ha[s] to be viewed from the objective basis of its need in the marketplace, rather than from the subjective basis of whether the individual fees claimant had encountered actual difficulty in obtaining counsel"). The plaintiffs further argue that in determining whether to apply a multiplier, the Court should consider the purpose of the multiplier which "is to equal the playing field." Id.

The instant case does not warrant the application of a multiplier under the Quanstrom factors. The first factor – whether the relevant market requires a contingency fee multiplier to obtain competent counsel – has not been met. There is no

record evidence that the plaintiffs were turned away by other law firms or had any difficulty obtaining legal representation in this case. See David L. Goldstein DMD PA v. Phoenix Ins. Co., No. 6:17-CV-1963-ORL-31-TBS, 2018 WL 5084750, at *6 (M.D. Fla. Aug. 21, 2018) (declining to apply multiplier, in part, because there was "no showing that other firms refused to take the case under a standard contingency arrangement so as to satisfy the Court that the possibility of recovering a contingency fee multiplier was necessary for [p]laintiff to obtain competent counsel").

Although the plaintiffs three attorneys assert that they would not have accepted this case without the possibility of a multiplier, the Court notes that none of the state court fee cases submitted in support of the instant Motion awarded a multiplier to these attorneys. See State Court Fee Orders (DE# 138-1 at 31-41;138-2 at 21-55; 138-4 at 17, 5/13/20). In fact, Mr. Vazquez represents the plaintiffs in four separate claims against GeoVera, including the two claims which comprise the instant case. See Aff. of Lazaro Vazquez at ¶ 6.

Even applying an objective standard, the Court notes that property damage cases such as the instant case are not uncommon in South Florida, particularly claims involving hurricane damage, and attorneys who practice in this area are not in short supply. See St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co., No. 18-21365-CIV, 2019 WL 7905013, at *7 (S.D. Fla. Oct. 10, 2019) ("as the number of cases filed in this Court illustrates, a plethora of experienced practitioners routinely pursue insurance cases following hurricanes or other significant causes of loss"). Mr. Vazquez acknowledges in his affidavit that Geo[V]era "defends many cases in South Florida through jury trial and appeal." See Aff. of Lazaro Vazquez at ¶ 9.

The Florida Supreme Court has noted that "[a] primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it." Bell v. U.S.B. Acquisition Co., 734 So. 2d 403, 411 (Fla. 1999). Here, the record does not reflect that a multiplier is necessary to entice competent attorneys to litigate cases such as this one. "This alone is fatal to . . . [the] request for a fee multiplier because '[i]f there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded.'" St. Louis Condo. Ass'n, Inc., 2019 WL 7905013, at *7 (quoting USAA Cas. Ins. Co. v. Prime Care Chiropractic Enters, P.A., 93 So. 3d 345, 347 (Fla. 2d DCA 2012)).

The second factor asks whether the attorneys were able to mitigate the risk of nonpayment in any way. Mr. Accetta, Mr. Vazquez and Mr. Gomez represented the plaintiffs on a contingency fee basis. However, "the existence of a contingent fee agreement alone does not mandate the application of a multiplier." St. Louis Condo. Ass'n, Inc., 2019 WL 7905013, at *8. Here, the plaintiffs offer only conclusory statements concerning their inability to pay their attorneys. See, e.g., Aff. of Lazaro Vazquez at ¶ 20 (attesting that "Mr. Rodriguez and Mrs. Rodriguez are not financially able to hire an attorney to handle these cases on an hourly fee basis."); Decl. of Pls.' Expert at ¶ 11 (attesting that "[b]ased on [his] discussion with Mr. Vazquez, Mr. and Mrs. Rodriguez are not financially able to hire an attorney to handle these cases on an hourly fee basis"). Additionally, the fee shifting provision itself provides mitigation against the risk of non-payment. See Hegel v. First Liberty Ins. Corp., No. 8:12-CV-1161-T-17MAP, 2014 WL 5473185, at *5 (M.D. Fla. Oct. 23, 2014) (stating "the Court is unconvinced

that counsel's acceptance of this case on a contingency basis alone justifies enhancement. Fla. Stat. § 627.428 guarantees attorneys['] fees if [p]laintiffs prevailed, and [p]laintiffs did prevail").

Lastly, the third factor – whether any of the <u>Rowe</u> factors are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client – has not been met. The plaintiffs were successful at trial and, as a result of that success, the plaintiffs were awarded a money judgment and are receiving a substantial attorney's fee award. The Court remains unconvinced that the instant case involved complex litigation. At bottom, the instant case was an insurance coverage case which included an affirmative defense for fraud/misrepresentation. To the extent the plaintiffs are relying on the defendant's alleged vigorous defense of the case, the lodestar adequately accounts for it. <u>See</u> <u>Pa. v. Del. Valley Citizens' Council for Clean Air</u>, 483 U.S. 711, 730 (1987) (stating that "[t]he matter may have been difficult, wearing, and time consuming, but that kind of effort has been recognized in the lodestar award.").

Accordingly, no multiplier will be awarded in this case.

**B.    Costs**

In order to address the plaintiffs' costs request, a review of some of the procedural history of this case is helpful.

On March 24, 2020, the plaintiffs filed a motion to tax costs and a bill of costs totaling $59,788.87. <u>See</u> Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Motion to Tax Costs and Supporting Memorandum of Law, Sworn Bill of Costs and Supporting Documentation (DE# 152 in Case No. 18-cv-23585-JJO; DE# 129 in Case 19-cv-21173-

JJO, 3/24/20) (hereinafter "Motion to Tax Costs"); Bill of Costs (DE# 152-1 in Case No. 18-cv-23585-JJO; DE# 129-1 in Case 19-cv-21173-JJO at 2-3 in Case No. 19-cv-21173-JJO, 3/24/20). The Motion to Tax Costs was accompanied by approximately 215 pages of invoices, checks, credit card authorization forms, pay-by-phone parking screenshots, order summaries, charts and shipment receipts. The Motion to Tax Costs was separate from the instant Motion for Attorney's Fees which also includes the same bill of costs and the same approximately 215 pages of supporting documents.

The defendant filed a response in opposition and the plaintiffs filed a reply in support of the Motion to Tax Costs. See GeoVera's Response to Plaintiffs Jose Rodriguez and Marcee K. Rodriguez's Motion to Tax Costs (DE# 153 in Case No. 18-cv-23585-JJO; DE# 130 in Case 19-cv-21173-JJO, 4/7/20) (hereinafter "Response to Motion to Tax Costs"); Plaintiffs' Reply to Geo[V]era's Response to Plaintiffs Jose Rodriguez and Marcee K. Rodriguez's Motion to Tax Costs (DE# 158 in Case No. 19-cv-21173; DE# 135 in Case 19-cv-21173-JJO, 4/14/20) (hereinafter "Reply in Support of Motion to Tax Costs").

After the Motion to Tax Costs was fully briefed, the Court issued a 23-page Order awarding the plaintiffs $9,175.97 in taxable costs under 28 U.S.C. § 1920. See Order (DE# 145 in Case No. 19-cv-21173-JJO; DE# 168 in Case No. 18-cv-23585-JJO, 5/26/20).

Given that the plaintiffs' Motion to Tax Costs was separately filed, was fully briefed and the Court issued an Order awarding costs under section 1920, the Court is not convinced that the plaintiffs' costs remain pending (or that they are part of the instant Motion for Attorney's Fees). Nonetheless for the sake of completeness, the

Court will address the plaintiffs' assertion in their Reply that they are now seeking costs under Fla. Stat. § 57.041. <u>See</u> Reply at 9-10.

The Court notes that nowhere in the body of the Motion for Attorney's Fees currently pending before the Court — Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Verified Motion to Determine Amount of Attorneys' Fees and Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest (DE# 161 in Case No. 18-cv-23585-JJO; DE# 138 in Case No. 19-cv-21173-JJO, 5/13/20) — is there any specific discussion of a request for costs under section 57.041. There are scattered references to the plaintiffs' entitlement to costs throughout the Motion for Attorney's Fees. <u>See</u> Motion for Attorney's Fees at 1-2, 4, 6, 9, 11. But the only reference to section 57.041 is in an introductory sentence on the first page which also includes a reference to section 1920. Motion for Attorney's Fees at 1.

In their Reply, the plaintiffs state that they are seeking $50,612.90 in costs under section 57.041 because the Court has already awarded the plaintiffs $9,175.97 in taxable costs pursuant to 28 U.S.C. § 1920. <u>See</u> Reply at 9; Order (DE# 168 in Case No. 18-cv-23585-JJO; DE# 145 in Case No. 19-cv-21173-JJO, 5/26/20). In other words, the plaintiffs took the $59,788.87 they originally sought for costs and subtracted the $9,175.97 awarded by the Court pursuant to 28 U.S.C. § 1920 to come up with the new costs amount of $50,612.90.

In reaching this new costs calculation, the plaintiffs ignore the fact that they unequivocally withdrew $6,739.56 from their original costs. <u>See</u> Reply in Support of Motion to Tax Costs at 8-9 (withdrawing costs for mediation, PACER, travel, research, courier/shipping charges and parking). Having withdrawn these charges, the plaintiffs

cannot simply tack them back on again for the Court's reconsideration in a reply to the fees motion.

Prior to issuing its Order awarding costs to the plaintiffs, the Court painstakingly reviewed the plaintiffs' Motion for Costs (including the approximately 215 pages in supporting documents), the Response to Motion to Tax Costs and the Reply in Support of Motion to Tax Costs. After careful consideration, the Court determined that a significant portion of the costs sought by the plaintiffs were not taxable under 28 U.S.C. § 1920 in a detailed 23-page Order. See Order (DE# 168 in Case No. 18-cv-23585-JJO; DE# 145 in Case No. 19-cv-21173-JJO, 5/26/20). The plaintiffs cannot simply undo all of the Court's labor by asserting (after the issuance of the Court's Order awarding costs and in the reply brief to the fees motion)[10] that they are actually seeking costs pursuant to section 57.041 of the Florida Statutes. Reply at 9.

Nowhere in the body of the Motion for Attorney's Fees that the Court is presently ruling on — Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Verified Motion to Determine Amount of Attorneys' Fees and Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest (DE# 161 in Case No. 18-cv-23585-JJO; DE# 138 in Case No. 19-cv-21173-JJO, 5/13/20) — is there any specific discussion of a request for costs pursuant to section 57.041. A party cannot raise a new argument for the first

---

[10] The only reference to section 57.041 in the instant Motion for Attorney's Fees is the following statement: "Plaintiffs, JOSE RODRIGUEZ and MARCEE K. RODRIGUEZ, by and through undersigned counsel and pursuant to 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), Local Rule 7.3, the Court's Final Judgment, and sections 626.9373, 626.911, 627.428, **57.041**, Florida Statutes, and other applicable Florida law, respectfully request this Court for [sic] an award of attorneys' fees in the amount of $1,337,264.42, and an award of costs in the amount of $59,788.87." Motion at 1 (emphasis added). There is no other reference or discussion of section 57.041 in the instant Motion.

time in a reply brief. See Herring v. Secretary, Dep't of Corrs., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations omitted); Willis v. DHL Global Customer Sols. (USA), Inc., No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (noting that "[j]udges in this district . . . have repeatedly rejected attempts by parties to raise new arguments in reply memoranda").The plaintiffs are not entitled to a "do over" costs determination under section 57.041, simply because they are dissatisfied with the costs awarded under section 1920.

The plaintiffs correctly note that "[t]he category of costs that are to be awarded per 57.041, Florida Statutes, encompasses a broader category of costs that are compensable . . . . ." Reply at 9. The problem for the plaintiffs, however, is that the basis for their Motion to Tax Costs was section 1920.

The Motion to Tax Costs contains one lone reference to section 57.041:

> Plaintiffs JOSE RODRIGUEZ and MARCEE K. RODRIGUEZ (hereinafter "Plaintiffs"), by and through their undersigned counsel, and pursuant to this Court's Final Judgment entered on February 26, 2020, Rule 54(d), Federal Rules of Civil Procedure, Local Rule 7.3 of the Southern District of Florida, and in accordance with Fla. Stat. §§ 626.9373, 626.911, 627.428, **57.041** and other applicable Florida law, hereby moves this Court for an Order taxing costs against Defendant, GEOVERA SPECIALTY INSURANCE COMPANY, in the amount set forth below.

Motion to Tax Costs at 1 (emphasis added). Notwithstanding this introductory statement, the Motion to Tax Costs contains no legal analysis of section 57.041.

By contrast, the Motion to Tax Costs quotes the text of 28 U.S.C. § 1920 almost entirely. Motion to Tax Costs at 10. The plaintiffs specifically cite to section 1920 as the basis for their requests for costs incurred in relation to fees of the clerk, summonses

and subpoenas, transcripts, photocopies, exemplifications, materials/supplies and PACER fees. Id. at 10-12. The plaintiffs also include cases which apply section 1920. Id. at 11.

The plaintiffs' reliance on section 1920 as the sole basis for their costs motion is even more evident in their Reply in Support of Motion to Tax Costs. In that document, the plaintiffs make eight references to section 1920 and cite approximately 16 cases discussing costs under section 1920. Reply in Support of Motion to Tax Costs at 3-8. The Reply in Support of Motion to Tax Costs also includes the following statement: "Defendant has not specified exactly what costs it is requesting be 'denied' therefore, the **Plaintiffs request that any costs not specifically addressed by this Reply be awarded under 28 U.S.C. [§]1920** against the Defendant in these actions." Id. at 9 (emphasis added). There is no discussion of section 57.041 in the Reply in Support of Motion to Tax Costs.

Given the plaintiffs' heavy reliance on section 1920 and the lone reference to section 57.041 in an introductory paragraph, the lack of any legal analysis concerning section 57.041 and the extensive discussion by the plaintiffs of costs under section 1920, it was reasonable for the Court to conclude that the plaintiffs were only seeking costs under section 1920. The Court analyzed the plaintiffs' Motion to Tax Costs under section 1920 and awarded the plaintiffs $9,175.97 in taxable costs. See Order (DE# 168 in Case No. 18-cv-23585-JJO; DE# 145 in Case No. 19-cv-21173-JJO, 5/26/20).

The Court will award no additional costs to the plaintiffs.

**C.     Prejudgment Interest**

The plaintiffs also seek prejudgment interest beginning on March 19, 2020, the

date the defendant stipulated to the plaintiffs' entitlement to fees and costs. Motion at 2. The defendant does not address the plaintiffs' request for prejudgment interest other than stating it did not agree to the amount of prejudgment interest. See Response at 2 (stating that "[e]ven though Plaintiffs' Motion is titled 'Unopposed,' GeoVera had not agreed to individual line items for fees, the amount of fees and costs, hourly rate, whether a multiplier is applicable, **the amount of pre-judgment interest**, and other items included with Plaintiffs' request for fees.") (emphasis added).

"Pre-judgment interest is recognized as merely another element of pecuniary damages such that when a verdict liquidates damages on a plaintiff's out-of-pocket pecuniary losses, plaintiff is entitled, as a matter of law, to pre-judgment interest at the statutory rate from the date of that loss." Fid. & Guar. Ins. Underwriters, Inc. v. Federated Dep't Stores, Inc., 845 So. 2d 896, 903 (Fla. 3d DCA 2003). Because the defendant did not oppose the plaintiff's entitlement to pre-judgment interest, but rather contested the amount, the plaintiffs' request for pre-judgment interest will be **GRANTED**.

## **CONCLUSION**

For the reasons stated herein, the Court will award the plaintiffs attorney's fees in the amount of **$458,889.85** ($164,591.71 for the work performed by Mr. Accetta's law firm plus $204,558.75 for the work performed by Mr. Vazquez' law firm plus $89,739.39 for the work performed by Mr. Gomez' law firm). Accordingly, it is

ORDERED AND ADJUDGED that the Plaintiffs Jose Rodriguez's and Marcee K. Rodriguez's Verified Motion to Determine Amount of Attorneys' Fees and Costs, for Lodestar Multiplier, and for Entitlement to Prejudgment Interest (DE# 161 in Case No.

18-cv-23585-JJO; DE# 138 in Case No. 19-cv-21173-JJO, 5/13/20) is **GRANTED in part and DENIED in part** as follows:

1.    The parties shall confer and attempt to agree on the amount of pre-judgment interest. Within **one (1) week** from the date of this Order, the parties shall file a joint notice of calculation of pre-judgment interest. If the defendant does not agree to the plaintiffs' calculation of pre-judgment interest, the defendant shall state with specificity and with supporting authority its objection to the manner in which the pre-judgment interests was calculated in the joint notice.

2.    Upon the filing of the joint notice of calculation of pre-judgment interest, the Court will enter a separate fees judgment in the amount of **$458,889.85** plus pre-judgment interest.

DONE AND ORDERED in Chambers at Miami, Florida, this **19th** day of November, 2020.

_____

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE